# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Ryding v. Cincinnati Special Underwriters Insurance Co., 2013 IL App (2d) 120833**

---

| | |
|---|---|
| Appellate Court Caption | KATHLEEN R. RYDING, Supervised Administrator of the Estate of Helen Z. Fairchild, Deceased, Plaintiff-Appellee, v. THE CINCINNATI SPECIAL UNDERWRITERS INSURANCE COMPANY, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-0833 |
| Filed | June 28, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a declaratory judgment action seeking to establish that defendant was obligated to cover the loss arising from the destruction of the deceased ward's residence and garage in a fire, the trial court properly entered summary judgment for the administrator of the deceased's estate, notwithstanding the fact that the policy covered the interest of the public guardian in the property and the public guardian was discharged upon deceased's death, which occurred prior to the fire, since the insurance was obtained to protect the deceased's interest, the premiums were chargeable to the estate, the estate was the intended insured, and the loss was covered. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 11-MR-1347; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Richard D. Heytow, of Tressler LLP, of Chicago, for appellant.

John J. Pcolinski, Jr., of Guerard, Kalina & Butkus, of Wheaton, for appellee.

Panel

JUSTICE SPENCE delivered the judgment of the court, with opinion.

Presiding Justice Burke and Justice McLaren concurred in the judgment and opinion.

## OPINION

¶ 1        Plaintiff, Kathleen R. Ryding, as supervised administrator of the estate of Helen Z. Fairchild, deceased, filed a lawsuit in the circuit court of Du Page County against defendant, The Cincinnati Special Underwriters Insurance Company, seeking a declaratory judgment that a property insurance policy issued by defendant covered fire damage to certain real property included in the estate. Both parties moved for summary judgment. The trial court granted the plaintiff's motion and denied defendant's. Defendant now appeals. We affirm.

¶ 2        The pertinent facts are undisputed. Prior to her death, Fairchild had been a ward of the public guardian of Du Page County (Public Guardian). On December 23, 2008, defendant issued or renewed a policy of commercial property insurance with a declarations page identifying the named insured as:

> "Office of the Public Guardian for Dupage Co.
>
> Refer to Named Insured Schedule CSIA 409 01 08"

There was no "Named Insured Schedule CSIA 409 012 09" attached to the policy.

¶ 3        The policy period was from December 23, 2008, to December 23, 2009. The policy provided that "the words 'you' and 'your' refer to the Named Insured shown in the Declarations. The words 'we', 'us' and 'our' refer to [defendant]." A "Commercial Property Premises Schedule" was attached to the policy. Among the scheduled properties was certain improved real estate in Darien owned by Fairchild. The property was designated as "Prem. No. 5 Bldg. No. 6" and, in another schedule, the "Estate of Helen Fairchild" was designated as the "Loss Payee" associated with the property. An endorsement to the policy provided:

> "**LOSS PAYABLE**
>
> For Covered Property in which both you and a Loss Payee *** have an insurable interest, we will:
>
> 1. Adjust losses with you; and
>
> 2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests

may appear."

¶ 4 The policy further provided:

"Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property."

¶ 5 Fairchild died on February 1, 2009. On March 5, 2009, the Public Guardian was discharged and the public administrator for Du Page County was appointed as administrator of Fairchild's estate. On September 24, 2009, a residence and a detached garage on the Darien property were destroyed by fire. Defendant denied a claim for the loss, asserting that the policy covered *the Public Guardian's* insurable interest in the property and that the Public Guardian, having previously been discharged after Fairchild's death, had no insurable interest in the property at the time of the loss.

¶ 6 As noted, this appeal arises from an order deciding the parties' cross-motions for summary judgment. Summary judgment is proper where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 305 (2005). Here, the material facts are not in dispute. Whether, in light of those facts, the destruction of the Darien property is a covered loss is a question of law. Our review is *de novo*. *Id.*

¶ 7 Our supreme court has offered the following summary of the principles governing the construction of language in an insurance policy:

"Insurance policies are subject to the same rules of construction applicable to other types of contracts. [Citation.] A court's primary objective is to ascertain and give effect to the intention of the parties as expressed in the agreement. [Citation.] In performing that task, the court must construe the policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. [Citation.]

The words of a policy should be accorded their plain and ordinary meaning. [Citation.] Where the provisions of a policy are clear and unambiguous, they will be applied as written [citation] unless doing so would violate public policy [citation]." *Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd.*, 223 Ill. 2d 407, 416-17 (2006).

That said, "[w]hile we will not strain to find an ambiguity where none exists [citation], neither will we adopt an interpretation which rests on 'gossamer distinctions' that the average person, for whom the policy is written, cannot be expected to understand [citation]." *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010).

¶ 8 Defendant contends that the rights of Fairchild's estate to coverage arise under the

policy's loss payable provision. That provision applies to "Covered Property in which both *you* and a Loss Payee *** have an insurable interest." (Emphasis added.) "You" means the named insured. Thus, according to defendant, the loss would not be covered merely because the estate–a loss payee–had an insurable interest. Rather, the named insured must also have an insurable interest. Generally speaking, a person has an insurable interest in property whenever he or she "would profit by or gain some advantage by its continued existence or suffer loss or disadvantage by its destruction." *Hawkeye-Security Insurance Co. v. Reeg*, 128 Ill. App. 3d 352, 355 (1984). As plaintiff points out, a guardian is not vested with title to a ward's estate, but rather " 'is charged with its care and management.' [Citations.]" *In re Estate of Brach*, 76 Ill. App. 3d 1050, 1054-55 (1979). There appears to be no dispute, however, that a guardian's potential liability for injury to property of the ward's estate (see, *e.g.*, *In re Estate of Dyniewicz*, 271 Ill. App. 3d 616, 627 (1995)) gives the guardian an insurable interest in the property. Accord *National Security Fire & Casualty Co. v. Brannon*, 296 So. 2d 170, 173-74 (Ala. Civ. App. 1974).

¶ 9    Defendant argues that, after the Public Guardian was discharged, it no longer had an insurable interest in the Darien property, and thus Fairchild's estate, as a loss payee, was no longer entitled to recover under the policy. Defendant relies in large measure on *Barwick v. Westchester Fire Insurance Co. of New York*, 266 Ill. App. 574 (1932). Before discussing that decision, we note that, because it was filed before 1935, it is not binding authority. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 95 (1996). In *Barwick*, the named plaintiff, John Barwick, was the vendee under a contract for the sale of a farm owned by Mrs. A.P. Lager. Barwick procured insurance in his own name on a dwelling on the property. A rider to the policy provided, however, for " 'loss, if any, payable to Mrs. A.P. Lager and John Barwick, as their interest may appear.' " *Barwick*, 266 Ill. App. at 575. The dwelling was destroyed by fire, but the insurer refused to pay the loss, claiming that the policy was void pursuant to a provision prohibiting Barwick from obtaining other insurance on the property. At issue in *Barwick* was whether Lager could recover under the policy. In holding that she could not, the *Barwick* court reasoned as follows:

> "The policy provided that the appellant 'does insure John Barwick for the term of five years.' He procured the insurance and paid the premium. It is therefore apparent that Barwick was the party insured, unless the effect of the loss payable clause, set out in the attached rider, was to indemnify the interest of Mrs. Lager.
>
> Similar clauses have been construed, where the payee has been vendor, mortgagee and creditor, and the decided weight of authority is that where the clause, in substance, provides that the loss, if any, is payable to a specified third party, and there are no further provisions in the policy or payment clause, creating a different relation, such person is not a party to the contract, and the clause does not amount to an insurance of the payee's interest in the property. The party designated is merely an appointee to receive the sum which might be recovered by the insured in case of loss, to the extent of the appointee's interest therein. The payee has no direct rights against the insurer, but recovers, if at all, solely in the right of the insured, and only when the latter has a valid and enforceable demand under the policy.
>
> The clause, in effect, is the covenant of the insurer to pay to the appointee any loss

-4-

to which the insured might be entitled by virtue of the contract, to the extent of the payee's interest. [Citations.]" *Id.* at 577.

¶ 10 In *Barwick* and the cases to which it referred, the respective interests of the loss payee and the named insured–to wit, vendor/vendee, mortgagee/mortgagor, debtor/creditor–were considerably different from the respective interests here. As noted, a guardian's insurable interest in a ward's property arises from the guardian's duty to manage and care for the property. The guardian's insurable interest is not a *property* interest as would be the interest of a vendee, a mortgagor, and, in some cases, a creditor. Presumably, in *Barwick* and similar cases the loss payee was in a position to protect his or her own interests. It is hardly clear that rules developed in that setting are suited to cases where the named insured has a fiduciary duty to a loss payee who lacks the capacity to manage his or her own affairs.

¶ 11 Significantly, in *Barwick*, the court emphasized that the named insured paid the premium for the insurance. *Cf. The Suburban, Inc. v. Cincinnati Insurance Co.*, 323 Ill. App. 3d 278, 283-84 (2001) ("It is the law in Illinois that when a party contracts for insurance, pays the premium, and the insurer makes the loss payable to such party, the agreement to pay is a contract with the party who paid the consideration, and he has a right of action in his own name, despite the fact that the insurance is in the name of another."). A guardian is entitled to use funds of the ward's estate for purposes of protecting the ward's property (39 Am. Jur. 2d *Guardian and Ward* § 251, at 179 (1999)) and may therefore charge the costs of insurance to the estate (see, *e.g.*, *In re Asseo*, 534 N.Y.S.2d 700, 701 (N.Y. App. Div. 1988)). Section 13-5(c) of the Probate Act of 1975 (755 ILCS 5/13-5(c) (West 2010)) provides that the Public Guardian "shall maintain insurance on all of the ward's real and personal property." As noted, the insurance premiums are a proper charge against the assets of the ward's estate.

¶ 12 Neither *Barwick* nor any other Illinois decision that the parties have cited (or that our research has uncovered) provides guidance, so we may look to decisions from other jurisdictions for their persuasive value. *Rhone v. First American Title Insurance Co.*, 401 Ill. App. 3d 802, 812 (2010). The facts of a case from Idaho–*March v. Snake River Mutual Fire Insurance Co.*, 404 P.2d 614 (Idaho 1965)–are reasonably similar to the facts of this case. In *March*, the plaintiff was the administrator of the estate of Joseph Bibeau, deceased. Prior to Bibeau's death, he was being cared for by friends, including Claude N. Simon. At Bibeau's request, Simon purchased insurance for a house, a barn, and a quantity of hay on land that Bibeau owned. The policy named "Claude N. Simon as Guardian of Joseph Bibeau" as the insured, although Simon had not actually been appointed Bibeau's guardian. After Bibeau's death, but during the policy period, the barn and the hay were destroyed by fire. The plaintiff then sued the insurer on the policy. The trial court entered judgment for the insurer on the grounds that Simon, not Bibeau, was the insured when the loss occurred. The Idaho Supreme Court reversed. Observing that Simon obtained the policy " 'as guardian of Joseph Bibeau,' " which was not the case, the court found it "necessary to determine what was the intention of the parties as to the identity of the insured." *Id.* at 616. The court's determination was as follows:

> "Throughout his testimony in this connection Simon repeatedly stated that the insurance he had so applied for and procured was for Joe Bibeau. He, Simon, advanced the insurance premium for the first year but he afterwards filed his claim against the

estate of Bibeau for reimbursement of that amount, which action in effect is recognition that the coverage belonged to Bibeau. There is no doubt that the insurance was primarily for the protection of Bibeau's property and that all parties concerned therewith intended and considered Bibeau as the insured under the policy." *Id.* at 617.

¶ 13    We find the reasoning in *March* persuasive. The portion of the declarations page specifying the insured under the policy not only named the Public Guardian, but also made reference to an apparently nonexistent "Named Insured Schedule." This, like the nonexistent guardianship in *March*, is reason enough for an inquiry into the intention of the parties as to the identity of the insured. It is clear from the face of the policy that the Public Guardian obtained coverage not to protect his own property interests, but to protect the property interests of his wards, including Fairchild. Moreover, under basic principles of guardianship law, the premiums associated with coverage of Fairchild's property were chargeable to her estate. We thus conclude that Fairchild's estate–not the guardian of the estate–was intended to be an insured under the policy and that the damage to the Darien property was a covered loss.

¶ 14    For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

¶ 15    Affirmed.